UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN C. YOUNG, | Case No. CV 20-9199-VBF (KK) |
| Plaintiff, | |
| v. | ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND |
| LEVERT, ET AL., | |
| Defendant(s). | |

**I.**

**INTRODUCTION**

Plaintiff John C. Young ("Plaintiff"), a pretrial detainee proceeding pro se and in forma pauperis, filed a Complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") for violations of his Fourth and Fourteenth Amendment rights.  For the reasons discussed below, the Court dismisses the Complaint with leave to amend.

**II.**

**ALLEGATIONS IN THE COMPLAINT**

On September 25, 2020, Plaintiff constructively filed[1] the Complaint against the County of Los Angeles, various "John Doe" defendants in their individual and

---

[1] Under the "mailbox rule," when a pro se prisoner gives prison authorities a pleading to mail to court, the court deems the pleading constructively "filed" on the date it is signed.  Roberts v. Marshall, 627 F.3d 768, 770 n.1 (9th Cir. 2010); see Douglas v.

1  official capacities (the "Doe defendants"), and the following eighteen employees of

2  the Los Angeles County Sheriff's Department, each in their individual capacity:

3  Deputy Levert, Deputy Brown, Deputy Mendoza, Deputy Ramirez, Deputy Ayers,

4  Custody assistant Caulderon, Deputy O'Hern, Custody assistant Eisenhower, Deputy

5  Solano, Custody assistant Martinez, Deputy Petersen, Deputy Murcia, Deputy

6  Cococran, Nurse Ramos, Psychologist Sariono, Nurse Jackson, Sergeant Torres, and

7  Custody assistant Armstrong (collectively, "Defendants").  ECF Docket No. ("Dkt.")

8  1 at 1-8.

9       The allegations in the Complaint are organized under two "claims" arising from

10  two periods of time when Plaintiff was in custody of the Los Angeles County Sheriff's

11  Department as a pretrial detainee at Men's Central Jail and/or Twin Towers

12  Correctional Facility in Los Angeles County,[2] from approximately April 5, 2020

13  through April 13, 2020[3] ("Claim One") and again from April 28, 2020 through May 9,

14  2020 ("Claim Two").  Id. at 3.  Plaintiff claims he 1) was subjected to inhumane and

15  punitive conditions of confinement in violation of the Fourteenth Amendment; 2)

16  received inadequate medical care in violation of the Fourteenth Amendment; and 3)

17  was denied the right to be presented before a magistrate judge for an arraignment or

18  probable cause hearing within forty-eight hours in violation of the Fourth

19  Amendment.  Id. at 9-10.  Specifically, the Complaint sets forth the following

20  allegations:

21

22  _____

23  Noelle, 567 F.3d 1103, 1107 (9th Cir. 2009) (stating the "mailbox rule applies to Section 1983 suits filed by pro se prisoners").

24  [2] Plaintiff refers to "Los Angeles County Jail" throughout the Complaint.  Plaintiff appears to be presently confined at Men's Central Jail, but references being confined

25  at the Twin Towers Correctional Facility, dkt. 1 at 10.  Both facilities are located in Los Angeles and operated by the Los Angeles Sheriff's Department.

26  [3] On page 3 of the Complaint, Plaintiff lists the dates of Claim One as "5/5/20 – 5/13/20" and Claim Two as "5/25/20 – 6/9/20".  Dkt. 1 at 3.  These dates appear to

27  be erroneous because Plaintiff later describes the events in Claim One as beginning on April 5, 2020, the date of Plaintiff's arrest, and continuing over an eight day period.

28  Dkt. 1 at 9-10.  Plaintiff describes Claim Two as beginning on April 28, 2020, the date Plaintiff was re-arrested, and continuing over a nine day period.  Id. at 17-21.

2

**A.     CLAIM ONE**

On April 5, 2020, Plaintiff was arrested by the Los Angeles Police Department ("LAPD").  Id. at 9.  Plaintiff sustained injuries during the arrest and underwent surgery at a hospital.  Id.  While Plaintiff was still unconscious and "heavily medicated," he was transferred by the LAPD into the custody of the Los Angeles Sheriff's Department at "Module 172" of Twin Towers Correctional Facility.  Id. at 10.  When Plaintiff regained consciousness, he found himself in a dirty cell without a mattress, blanket, or his clothes, which had been replaced with a blue padded gown.  Id.  The cell had "dried up human excrement on two of the walls"; discarded rotten food bits "caked into the corners of the cell, creating a gut-wrenching odor"; no trash receptacle; and cold air blasting out of the vents.  Id. at 9-10.

In the next few days in Module 172 "during which COVID-19 was active," Plaintiff was denied a shower, toothpaste, toothbrush, toilet paper, soap, towel, and underwear.  Id. at 10.  Plaintiff did not receive "yard or dayroom time, etc." and did not receive dinner a total of "three out of the eight nights" while he was in Module 172.  Id.  Plaintiff alleges multiple defendants were aware of these deprivations because they were patrolling Floor 172 and heard Plaintiff's requests during this time period, but failed to assist.

Specifically, Defendant Levert came to Plaintiff's cell when Plaintiff regained consciousness and was banging on the cell's windows and door and "calling out" to passing jail staff to seek help understanding the nature of his arrest.  Id. at 10.  Defendant Levert entered Module 172 and began taping plastic bags to the windows of Plaintiff's cell, saying "You talk too fucken much. Fuck around and won't get your lunch, fucking with me" and told Plaintiff "now you gotta get down there to talk to me," pointing to a small opening left at the bottom of the windows.  Id. at 10-11.  Defendant Levert did not give Plaintiff dinner on the "second and fourth night in that module."  Id. at 11.  Plaintiff suffers from high blood pressure, and Defendant Levert

3

1   "persuade[d] the nurse from giving [Plaintiff] his medication" by telling the nurse

2   "this is the gasser." <u>Id.</u> at 11.

3         Plaintiff asked Defendant Brown for the "items" (e.g. a shower, basic hygiene

4   items such as soap and a toothbrush, yard and dinner), but defendant Brown refused

5   and called Plaintiff a "bitch" and "mark." <u>Id.</u> at 11.

6         Defendant Mendoza also refused to provide the items or provide Plaintiff a

7   grievance form, and instead insulted Plaintiff and "pound[ed] on the panel of the cell"

8   to wake Plaintiff when he was sleeping. <u>Id.</u> at 11-12.  Defendant Mendoza denied

9   Plaintiff dinner on the third night in Module 172 put placed it outside Plaintiff's cell

10  so Plaintiff could see it. <u>Id.</u> at 12.

11        Defendant Caulderon ignored Plaintiff's requests for the items described above

12  and laughed when Plaintiff requested a grievance form.  <u>Id.</u>

13        Defendant O'Hern walked past Plaintiff's cell and denied Plaintiff "all the

14  items" listed above.  <u>Id.</u>

15        Defendant Martinez denied Plaintiff's requests and ignored his "desperate pleas

16  for help." <u>Id.</u> at 13.

17        Defendant Ayers also denied Plaintiff's requests.  <u>Id.</u>

18        Plaintiff alleges the actions of defendants Levert, Brown, Mendoza, Caulderon,

19  O'Hern, Martinez, Ayers and various Doe defendants subjected Plaintiff to "cruel and

20  unusual conditions of confinement that served no penological objective" and

21  constituted deliberate indifference to "sub-standard, consci[ence]-shocking"

22  conditions of confinement.  <u>Id.</u> at 15-16.  Plaintiff alleges the Doe defendants, who

23  were employed as a "supervisor, doctor, nurse, deputy, etc." by Los Angeles County

24  but whose identities Plaintiff could not identify due to the plastic bags covering his

25  windows, are "equally liable." <u>Id.</u> at 16.

26        Additionally, when Plaintiff first arrived in Module 172, defendant Nurse

27  Ramos, the head nurse on Floor 172, approached Plaintiff after he "loud[ly] and

28  desperate[ly] bang[ed] against the window pane of the cell." <u>Id.</u> at 13.  Defendant

4

1   Nurse Ramos stated she would order Plaintiff a chest x-ray to test for tuberculosis

2   before Plaintiff would be released into general population.  Id. at 14.  Several hours

3   later, Plaintiff became "agitated" because no one had come to check on him.  Id.

4   Plaintiff "caught" defendant Nurse Ramos's attention and defendant Nurse Ramos

5   "became angry," "promis[ed] retribution," and walked away.  Id.  In the subsequent

6   eight days, Plaintiff alleges defendant Nurse Ramos insulted and taunted Plaintiff and

7   did not administer his medication.  Id. at 16.  Defendant Nurse Jackson was also

8   stationed on Floor 172 and "never once gave [Plaintiff] his medication the entire time

9   he was there" and would "simply walk pas[t] the strange cell with the plastic taped

10  over the window."  Id. at 15.  Plaintiff alleges defendants Nurse Ramos' and Nurse

11  Jackson's "negligence" and "repeated[] fail[ure]" to give Plaintiff his high blood

12  pressure medication constituted deliberate indifference to his serious medical need in

13  violation of the Fourteenth Amendment.  Id. at. 16.

14      Plaintiff also alleges that during his pretrial detention in Module 172, he was

15  not delivered to his arraignment or probable cause determination in violation of the

16  Fourth Amendment.  Id. at 10.  Plaintiff sues defendant County of Los Angeles,

17  alleging the County maintains a "policy, practice and custom whereby . . . inmates are

18  regularly not delivered to their arraignment or a probable cause determination

19  hearing."  Id. at 15.  Plaintiff alleges the County of Los Angeles maintains "policies,

20  practices and customs by which if an employee at the inmate reception feels offended

21  by an arriving inmate[, then] – with the endorsement of the psychologist, or under the

22  guise of 'refusing' a chest x-ray – [the inmate] is carried off to the suicide ward and

23  denied all the items listed [above]" and is denied a probable cause hearing.  Id. at 15.

24  Plaintiff states this practice is so popular that it is referred to as "being 'pencil

25  fucked'" and put in a "samara [sic] suit."  Id.

26      Plaintiff was released from pretrial detention on April 27, 2020.  Id. at 24.

27  ///

28  ///

5

**B.    CLAIM TWO**

Plaintiff's release was "short lived," and he was once again arrested on April 28, 2020, returned to the custody of the Los Angeles Sheriff's Department, and classified as a K-10 inmate.  Id. at 17.  Plaintiff was placed in a holding cell for six hours, during which time medical staff, including defendant Psychologist Sariono, came to speak with Plaintiff and check his vitals.  Id.  Medical staff then left because Plaintiff "was upset at having spent six hours in the cell."  Id.  Defendant Torres then came to the cell and informed Plaintiff the "psychologist and 'vital-signs' nurse had marked him down as refusing to talk to them."  Id.  Plaintiff responded that was not true, and he was "willing to adhere to whatever step was necessary to avoid" being confined in Module 172.  Id. at 17-18.

Defendant Psychologist Sariono came back to Plaintiff's cell multiple times and attempted to ask Plaintiff a "series of questions," which were recorded.  Id. at 18-19.  Plaintiff became irritated with her "condescending and provocative tone" and defendant Sariono eventually stated in the recording that Plaintiff was refusing to cooperate, which Plaintiff alleges was a "pretext for the extraction of an inmate that was perfectly willing to cooperate."  Id. at 19.  Plaintiff alleges defendant Sariono's actions constituted "deliberate indifference in her unnecessary and wanton infliction of pain" and "medical mistreatment of serious medical needs."  Id. at 7.

Defendant Sergeant Torres came to the holding cell.  Id. at 19. Plaintiff told defendant Torres he had an arraignment on April 30, 2020.  Id.  Defendant Torres escorted Plaintiff into a medical room where a nurse took his vitals, blood pressure and administered his high-blood pressure pill.  Id.  Plaintiff was then "escorted out of the medical room, and with the 'x-ray room' a few feet away, he was instructed to sit on the floor where his legs were wrapped" and "placed in a wheel-chair like device and hauled off to Module 172."  Id. at 20.

Defendant Ayers received Plaintiff at the base of the Twin Towers section of the jail.  Id.  Plaintiff asked defendant Ayers about his arraignment on April 30, 2020

and defendant Ayers said it "depended on whether he . . . had a chest x-ray." Id. at 20. Plaintiff was then "wheeled off the elevator, pinned to the dirty floor by six deputies and stripped naked." Id.

During his time in Module 172, Plaintiff was again "denied a mattress, toothpaste and [tooth]brush, face mask, toilet paper, towel, soap, underwear, dinner five out of nine nights there; a blanket; a trash receptacle or trash pick up his entire time there; a cell free of human excrement on the walls; cleaning supplies; his medication and subject to some of the most punitive, consc[ience]-shocking treatment any American – pretrial detainee or not – should ever be subjected to." Id. at 21. Plaintiff alleges multiple defendants were aware of these deprivations but failed to assist.

Specifically, defendant Brown was among the deputies who "pinned" Plaintiff and cut off his clothes. Id. at 21. Defendant Brown told Plaintiff "welcome back to my house, bitch." Id. Defendant Brown was also aware of Plaintiff being denied the items listed above (e.g. a shower, basic hygiene items such as soap and a toothbrush, yard and dinner), but "did nothing to assist . . . those punitive conditions of confinement." Id.

Defendant Levert again taped plastic bags on the windows of Plaintiff's cell; did not feed Plaintiff dinner on his first, second, fourth and seventh night in Module 172; and used "lies and manipulation to usher nurses past the Plaintiff's cell without giving him his medication." Id.

Defendant Solano threw Plaintiff's dinner on the floor "through the tray slot" on his third night in Module 172 and banged on Plaintiff's cell every time Plaintiff was asleep. Id. at 21-22. When Plaintiff stated his intention to file a complaint, defendant Solano replied, "don't be a fucken bitch. You know how many of those end up in the fucken trash can around here?" Id. at 22.

Defendants Peterson, Armstrong, Eisenhower, Murcia, and Cococran were all patrolling Floor 172 when Plaintiff was confined. Id. at 22-23. These defendants

1    were either "personally asked" for the items Plaintiff was derived of, or were "aware

2    of all the Plaintiff's deprivations" because they observed his conditions in the cell on

3    their patrols. <u>Id.</u>

4        Plaintiff alleges the actions of defendants Torres, Brown, Ayers, Levert, Solano,

5    Peterson, Armstrong, Eisenhower, Murcia, Cococran, and Doe defendants

6    constituted deliberate indifference to "oppressive conditions of confinement" that

7    were punitive and served "no legitimate objective." <u>Id.</u> at 23.

8        Plaintiff also alleges he was again "not delivered before a magistrate within the

9    forty-eight hour time provision" pursuant to the County of Los Angeles's

10    "regulations, usage, practice, policies, etc." in violation of the Fourth Amendment. <u>Id.</u>

11        Plaintiff alleges Defendants' actions caused "humiliation, stress, mental

12    anguish, pain and suffering, to contemplate suicide"; "stress and anxiety"; and

13    exposed him to "life-altering viruses and diseases" due to the existence of COVID-19.

14    <u>Id.</u> at 16, 23. Plaintiff seeks compensatory and punitive damages. <u>Id.</u> at 26.

15                       **III.**

16              **<u>STANDARD OF REVIEW</u>**

17        Where a plaintiff is proceeding <u>in forma pauperis</u>, a court must screen the

18    complaint under 28 U.S.C. § 1915 and is required to dismiss the case at any time if it

19    concludes the action is frivolous or malicious, fails to state a claim on which relief may

20    be granted, or seeks monetary relief against a defendant who is immune from such

21    relief. 28 U.S.C. § 1915(e)(2)(B); <u>see also</u> <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194

22    (9th Cir. 1998).

23        Under Federal Rule of Civil Procedure 8 ("Rule 8"), a complaint must contain a

24    "short and plain statement of the claim showing that the pleader is entitled to relief."

25    F<small>ED</small>. R. C<small>IV</small>. P. 8(a)(2). In determining whether a complaint fails to state a claim for

26    screening purposes, a court applies the same pleading standard as it would when

27    evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). <u>See</u>

28    <u>Watison v. Carter</u>, 668 F.3d 1108, 1112 (9th Cir. 2012).

A complaint may be dismissed for failure to state a claim "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." Zamani v. Carnes, 491 F.3d 990, 996 (9th Cir. 2007).  In considering whether a complaint states a claim, a court must accept as true all of the material factual allegations in it.  Hamilton v. Brown, 630 F.3d 889, 892-93 (9th Cir. 2011).  The court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).  Although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  The complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

"A document filed pro se is 'to be liberally construed,' and a 'pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" Woods v. Carey, 525 F.3d 886, 889-90 (9th Cir. 2008). Liberal construction, however, should only be afforded to "a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989), and a court need not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations," Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003).

If a court finds the complaint should be dismissed for failure to state a claim, the court has discretion to dismiss with or without leave to amend. Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000).  Leave to amend should be granted if it appears possible the defects in the complaint could be corrected, especially if the

plaintiff is <u>pro se</u>.  <u>Id.</u> at 1130-31; <u>see also</u> <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995).  However, if, after careful consideration, it is clear a complaint cannot be cured by amendment, the court may dismiss without leave to amend.  <u>Cato</u>, 70 F.3d at 1107-11; <u>see also</u> <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 972 (9th Cir. 2009).

**IV.**

**<u>DISCUSSION</u>**

**A.   PLAINTIFF'S FOURTH AMENDMENT CLAIM IS NOT PROPERLY BROUGHT PURSUANT TO SECTION 1983 AND IS <u>HECK</u> BARRED**

**1.   Applicable Law**

The Fourth Amendment "requires a prompt judicial determination of probable cause following an arrest made without a warrant and ensuing detention." <u>Powell v. Nevada</u>, 511 U.S. 79, 80 (1994).  An arrestee "is entitled under the Fourth Amendment to a hearing at which he is presented with the probable cause of his arrest within forty-eight hours of the arrest." <u>Benson v. Chappell</u>, 958 F.3d 801, 823 (9th Cir. 2020).  "[A]bsent extraordinary circumstances, a longer delay violates the Fourth Amendment." <u>Powell</u>, 511 U.S. at 80.

A petition for a writ of habeas corpus "is the exclusive remedy for a state prisoner who challenges the fact or duration of his confinement." <u>Heck v. Humphrey</u>, 512 U.S. 477, 481 (1994).  Under <u>Heck</u>, a claim that "necessarily implie[s] the invalidity of [a] conviction or sentence [may] not be maintained under § 1983 unless the [plaintiff] proved 'that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination[s], or called into question by a federal court's issuance of a writ of habeas corpus.'" <u>Nonnette v. Small</u>, 316 F.3d 872, 875 (9th Cir. 2002) (quoting <u>Heck</u>, 512 U.S. at 486-87); <u>see also</u> <u>Wilkinson v. Dotson</u>, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred" if "success in that action

1  would necessarily demonstrate the invalidity of confinement or its duration," except

2  where the prisoner's continuing confinement has already been invalidated.).

3      **2.    Analysis**

4      Here, Plaintiff sues the County of Los Angeles for violating Plaintiff's Fourth

5  Amendment right to be presented before a magistrate within forty-eight hours of

6  arrest.  Dkt. 1 at 1.  Plaintiff alleges his Fourth Amendment rights were violated twice:

7  first with respect to his April 5, 2020 detention, and then again with respect to April

8  27, 2020 detention.  By arguing he was denied an arraignment or probable cause

9  hearing, Plaintiff's claim seeks to challenge the "fact or duration" of Plaintiff's

10  confinement and must be brought in a petition for habeas corpus.  See Heck, 512 U.S.

11  at 481; Wilkinson, 544 U.S. at 81-82 (finding a claim "necessarily spell[ing] speedier

12  release" "lies at the core" of habeas relief, and not Section 1983 relief); Butterfield v.

13  Bail, 120 F.3d 1023, 1024 (9th Cir. 1997) (finding "[i]f the court concludes that the

14  challenge would necessarily imply the invalidity of the judgment or continuing

15  confinement, then the challenge must be brought as a petition for a writ of habeas

16  corpus, not under § 1983"); Tarabochia v. Clatsop Cnty., Or., 2013 WL 80143 (D. Or.

17  Jan. 3, 2013), vacated in part on other grounds, remanded sub nom. Tarabochia v.

18  Clatsop Cnty., Or., 646 F. App'x 535 (9th Cir. 2016) ("[A] finding by this court that

19  defendants violated plaintiff's constitutional rights by denying him a timely

20  preliminary hearing or probable cause hearing would arguably constitute grounds for

21  invalidating plaintiff's conviction. Therefore, plaintiff's [claim] is properly brought as a

22  petition for habeas corpus relief under 28 U.S.C. § 2254.").

23      In addition, Plaintiff fails to demonstrate his underlying convictions have been

24  invalidated.  Plaintiff's Fourth Amendment claim is, therefore, barred under Heck.

25  See Heck, 512 U.S. at 481.

26      Accordingly, Plaintiff's Fourth Amendment claim against the County of Los

27  Angeles is subject to dismissal.

28

**B.    PLAINTIFF FAILS TO STATE A FOURTH AMENDMENT CLAIM AGAINST THE COUNTY OF LOS ANGELES**

**1.    Applicable Law**

A municipality "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 694 (1978).  An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 166.

To state a cognizable Section 1983 claim against a municipality or local government officer in his or her official capacity, a plaintiff must show the alleged constitutional violation was committed "pursuant to a formal governmental policy or a 'longstanding practice or custom which constitutes the "standard operating procedure" of the local governmental entity.'" Gillette v. Delmore, 979 F.2d 1342, 1346 (9th Cir. 1992).  Proof of random acts or isolated events is insufficient to establish a custom or practice. Thompson v. City of L.A., 885 F.2d 1439, 1444 (9th Cir. 1989).  Rather, a plaintiff must prove widespread, systematic constitutional violations which have become the force of law. Board of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404 (1997).  In addition, a plaintiff must show the policy, practice, or custom was "(1) the cause in fact and (2) the proximate cause of the constitutional deprivation." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

**2.    Analysis**

Here, even if Plaintiff's Fourth Amendment claim against the County of Los Angeles was not barred by Heck, Plaintiff fails to demonstrate the denial of a timely

probable cause hearing was pursuant to a formal governmental policy or a "longstanding practice or custom" of the County of Los Angeles.  Plaintiff alleges this "deprivation was pursuant to [Los Angeles] County's regulations, usage, practice, policies, etc." Dkt. 1 at 15.  While not entirely clear, it appears Plaintiff is arguing the County of Los Angeles maintains a policy where if "an employee at the inmate reception feels offended by an arriving inmate," that inmate is "carried off to the suicide ward" and cannot leave.  Id. at 15.  This occurs by way of "endorsement of the psychologist, or under the guise of 'refusing' a chest x-ray." Id.  Plaintiff states this practice is so popular that it is called "being 'pencil fucked'" and put in a "samara [sic] suit." Id. at 15.

Plaintiff's conclusory allegations are insufficient to state a Section 1983 claim against the County of Los Angeles.  While Plaintiff was apparently twice confined to Module 172 and did not attend his probable cause hearing, these instances appear to be isolated events and do not demonstrate a widespread, systematic violation which have become the force of law.  Brown, 520 U.S. at 404.

Accordingly, Plaintiff's Fourth Amendment claim against the County of Los Angeles is subject to dismissal.

## C.   PLAINTIFF FAILS TO STATE A FOURTEENTH AMENDMENT INADEQUATE MEDICAL CARE CLAIM AGAINST DEFENDANTS NURSE RAMOS, NURSE JACKSON, OR PSYCHOLOGIST SARIONO

### 1.   Applicable Law

The Fourteenth Amendment, rather than the Eighth Amendment, governs claims for violations of the right to adequate medical care brought by pretrial detainees.  Gordon v. Cnty. of Orange, 888 F.3d 1118, 1124-25 (9th Cir. 2018), cert. denied sub nom. Cnty. of Orange, Cal. v. Gordon, 139 S. Ct. 794 (2019).  A claim of denial of the right to adequate medical care under the Fourteenth Amendment is

1    analyzed under an objective deliberate indifference standard, not a subjective

2    standard.  Id.  The elements of such a claim are:

3            (i) the defendant made an intentional decision with respect to the

4            conditions under which the plaintiff was confined; (ii) those conditions

5            put the plaintiff at substantial risk of suffering serious harm; (iii) the

6            defendant did not take reasonable available measures to abate that risk,

7            even though a reasonable official in the circumstances would have

8            appreciated the high degree of risk involved—making the consequences

9            of the defendant's conduct obvious; and (iv) by not taking such

10           measures, the defendant caused the plaintiff's injuries.

11   Id.

12           "With respect to the third element, the defendant's conduct must be objectively

13   unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each

14   particular case.'"  Id. (quoting Castro v. Cnty of Los Angeles, 833 F.3d 1060, 1071

15   (9th Cir. 2016)).  The "'mere lack of due care'" is insufficient.  Id. (quoting Daniels v.

16   Williams, 474 U.S. 327, 330-31 (1986)).  A plaintiff must "prove more than negligence

17   but less than subjective intent – something akin to reckless disregard."  Id.

18           **2.      Analysis**

19               **a.      Defendants Nurse Ramos and Nurse Jackson**

20           In Claim One, Plaintiff alleges defendant Nurse Ramos insulted and taunted

21   Plaintiff and did not administer his high blood pressure medication for a period of

22   eight days while he was in Module 172.  Dkt. 1 at 16.  Plaintiff also alleges defendant

23   Nurse Jackson was stationed on Floor 172 and "never once gave [Plaintiff] his

24   medication the entire time he was there" and would "simply walk pas[t]" his cell.  Id.

25   at 15.  Plaintiff, however, has failed to explain how either defendant Nurse Ramos or

26   defendant Nurse Jackson made an intentional decision putting Plaintiff at a

27   "substantial risk of suffering serious harm."  Gordon, 888 F.3d at 1124-25.

28   Specifically, Plaintiff has not alleged facts to indicate either defendant Nurse Ramos

1   or defendant Nurse Jackson was aware Plaintiff had a high blood pressure condition;

2   Plaintiff required medication; or whether Plaintiff in fact was prescribed and regularly

3   taking a specific medication that was intentionally denied.  Additionally, Plaintiff has

4   not alleged facts showing he suffered any harm or injury.  See id.

5        Plaintiff has therefore not shown the actions of defendant Nurse Ramos or

6   defendant Nurse Jackson were objectively unreasonable.  Accordingly, Plaintiff's

7   Fourteenth Amendment claim against defendants Nurse Ramos and Nurse Jackson is

8   subject to dismissal.

9            **b.   Defendant Sariono**

10       In Claim Two, Plaintiff alleges defendant Sariono came to Plaintiff's holding

11   cell and attempted to interview him upon his arrival at the prison.  Dkt. 1 at 17.

12   Defendant Sariono returned to Plaintiff's cell multiple times to ask questions but

13   Plaintiff became irritated with her "condescending and provocative tone."  Id. at 17-

14   19.  Though not entirely clear, it appears Plaintiff alleges defendant Sariono was using

15   a "pretext" to "extract[]" Plaintiff and presumably assign him to Module 172 against

16   his wishes by stating Plaintiff was refusing to cooperate.  Id. at 19.

17       Plaintiff has not demonstrated any element of a Fourteenth Amendment claim

18   against defendant Sariono.  Plaintiff has not alleged facts making it plausible that

19   defendant Sariono's attempts to interview him, or statement that he was refusing to

20   cooperate, constitute an "intentional decision" with respect to Plaintiff's conditions of

21   confinement which put Plaintiff "at substantial risk of suffering serious harm."

22   Gordon, 888 F.3d at 1124-25.  Moreover, Plaintiff has not alleged facts showing

23   defendant Sariono's actions were objectively unreasonable.  Plaintiff, in fact, concedes

24   he became angry with defendant Sariono and she left his cell multiple times, causing

25   Plaintiff to eventually be escorted out by defendant Torres.  Plaintiff also fails to

26   allege he suffered any injury under defendant Sariono's care or direction.  Id.  To the

27   extent Plaintiff attempts to argue defendant Sariono caused Plaintiff "injury" by

28

1   sending him to Module 172, Plaintiff has failed to demonstrate this decision was

2   objectively unreasonable.

3       Accordingly, Plaintiff's Fourteenth Amendment claim against defendant

4   Sariono is subject to dismissal.

5   **D.   PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS FOR**

6   **COMPENSATORY DAMAGES ARE BARRED BY THE PLRA**

7   **BECAUSE HE FAILS TO ALLEGE PHYSICAL INJURY**

8       **1.   Applicable Law**

9       The Prison Litigation Reform Act ("PLRA") provides that "[n]o Federal civil

10  action may be brought by a prisoner confined in jail, prison, or other correctional

11  facility, for mental and emotional injury suffered while in custody without a prior

12  showing of physical injury."  42 U.S.C. § 1997e(e).  This physical injury requirement

13  applies only to claims for mental or emotional injury and it does not bar claims for

14  compensatory, nominal, or punitive damages which are not premised on mental or

15  emotional injury.  Oliver v. Keller, 289 F.3d 623, 630 (9th Cir. 2002).

16      To satisfy this requirement, the physical injury "need not be significant but

17  must be more than de minimis."  Id. at 627.  However, "the absence of an observable

18  medical condition requiring treatment by a medical professional does not necessarily

19  render Plaintiff's injuries de minimis."  Monclova-Chavez v. McEachern, No. 1:08-

20  CV-00076-AWI, 2011 WL 39118, at *6 (E.D. Cal. Jan. 5, 2011), report and

21  recommendation adopted, 2011 WL 976476 (E.D. Cal. Mar. 17, 2011) (finding

22  "[e]ven if Plaintiff did not suffer any diagnosable injury that necessitated medical

23  treatment, Plaintiff's alleged injuries [of bruises on his right shoulder, right arm, and

24  hands, weakness and numbness in the right arm and shoulder] are more than de

25  minimis").

26      **2.   Analysis**

27      Here, Plaintiff fails to allege he suffered any physical injuries.  To the extent

28  Plaintiff seeks compensatory damages based solely on emotional injury, such claims

for emotional injuries are barred by the PLRA.  <u>Oliver</u>, 289 F.3d at 630; <u>Phillips v. Cnty. of Riverside</u>, No. 5-19-CV-01518-VAP-MAA, 2020 WL 4260963, at *12 (C.D. Cal. July 24, 2020) (finding prisoner's Fourteenth Amendment claim regarding conditions of confinement that did "not allege any physical injuries arising out of any of the conditions of confinement" did not satisfy the "physical injury" requirement of Section 1997e(e)).

## E.   PLAINTIFF'S CLAIMS AGAINST THE DOE DEFENDANTS ARE SUBJECT TO DISMISSAL

### 1.   Applicable Law

To state a Section 1983 claim against a defendant for violation of civil rights under Section 1983, a plaintiff must allege that the defendant deprived him or her of a right guaranteed under the Constitution or a federal statute.  <u>See West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Karim-Panahi v. Los Angeles Police Dep't</u>, 839 F.2d 621, 624 (9th Cir. 1998).  A plaintiff must present facts showing how a particular defendant was directly and personally involved in inflicting the alleged injury.  <u>See Iqbal</u>, 556 U.S. at 676.  Moreover, although a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  <u>Cook</u>, 637 F.3d at 1004 (quoting <u>Iqbal</u>, 556 U.S. at 678).

### 2.   Analysis

Here, Plaintiff makes no specific allegations against any of the Doe defendants, merely arguing they are "equally liable."  Dkt. 1 at 16.  Plaintiff's barebones assertions that various other defendants employed as "supervisor, doctor, nurse, deputy, etc." by Los Angeles County, but whose identities Plaintiff couldn't determine, fails to set forth specific allegations.  <u>Id.</u>  Plaintiff must allege specific facts showing how each Doe defendant was directly and personally involved in inflicting the alleged constitutional injury.  <u>See Iqbal</u>, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, Plaintiff's claims against the Doe defendants are subject to dismissal.

## V.

## LEAVE TO FILE A FIRST AMENDED COMPLAINT

For the foregoing reasons, the Complaint is subject to dismissal. As the Court is unable to determine whether amendment would be futile, leave to amend is granted. See Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam). Plaintiff is advised that the Court's determination herein that the allegations in the Complaint are insufficient to state a particular claim should not be seen as dispositive of that claim. Accordingly, while the Court believes Plaintiff has failed to plead sufficient factual matter in the pleading, accepted as true, to state a claim to relief that is viable on its face, Plaintiff is not required to omit any claim in order to pursue this action. However, if Plaintiff asserts a claim in Plaintiff's First Amended Complaint that has been found to be deficient without addressing the claim's deficiencies, then the Court, pursuant to the provisions of 28 U.S.C. § 636, ultimately will submit to the assigned district judge a recommendation that such claim be dismissed with prejudice for failure to state a claim, subject to Plaintiff's right at that time to file Objections with the district judge as provided in the Local Rules Governing Duties of Magistrate Judges.

Accordingly, IT IS ORDERED THAT **within twenty-one (21) days** of the service date of this Order, Plaintiff choose one of the following two options:

1.      Plaintiff may file a First Amended Complaint to attempt to cure the deficiencies discussed above. The Clerk of Court is directed to mail Plaintiff a blank Central District civil rights complaint form to use for filing the First Amended Complaint, which the Court encourages Plaintiff to use.

If Plaintiff chooses to file a First Amended Complaint, Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or

1    rewritten in its entirety, preferably on the court-approved form.  Plaintiff shall not

2    include new defendants or allegations that are not reasonably related to the claims

3    asserted in the Complaint.  In addition, the First Amended Complaint must be

4    complete without reference to the Complaint, or any other pleading, attachment, or

5    document.

6         An amended complaint supersedes the preceding complaint.  Ferdik v.

7    Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992).  After amendment, the Court will treat

8    all preceding complaints as nonexistent.  Id.  **Because the Court grants Plaintiff**

9    **leave to amend as to all claims raised here, any claim raised in a preceding**

10   **complaint is waived if it is not raised again in the First Amended Complaint.**

11   Lacey v. Maricopa Cnty., 693 F.3d 896, 928 (9th Cir. 2012).

12        The Court advises Plaintiff that it generally will not be well-disposed toward

13   another dismissal with leave to amend if Plaintiff files a First Amended Complaint

14   that continues to include claims on which relief cannot be granted.  "[A] district

15   court's discretion over amendments is especially broad 'where the court has already

16   given a plaintiff one or more opportunities to amend his complaint.'"  Ismail v. Cnty.

17   of Orange, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012); see also Ferdik, 963 F.2d at

18   1261.  Thus, **if Plaintiff files a First Amended Complaint with claims on which**

19   **relief cannot be granted, the First Amended Complaint will be dismissed**

20   **without leave to amend and with prejudice.**

21        2.    Alternatively, Plaintiff may file a notice with the Court that Plaintiff

22   intends to stand on the allegations in the Complaint.  If Plaintiff chooses to stand on

23   the Complaint despite the deficiencies in the claims identified above, then the Court

24   will submit a recommendation to the assigned district judge **that the deficient**

25   **claims discussed in this Order be dismissed with prejudice for failure to state a**

26   **claim,** subject to Plaintiff's right at that time to file Objections with the district judge

27   as provided in the Local Rules Governing Duties of Magistrate Judges.  If the

28   assigned district judge accepts the findings and recommendations of the undersigned

Magistrate Judge and dismisses the deficient claims discussed in this Order, the Court will issue a separate order regarding service of any claims remaining in the Complaint at that time.

     3.    Finally, Plaintiff may voluntarily dismiss the action without prejudice, pursuant to Federal Rule of Civil Procedure 41(a). <u>The Clerk of Court is directed to mail Plaintiff a blank Notice of Dismissal Form, which the Court encourages Plaintiff to use if Plaintiff chooses to voluntarily dismiss the action.</u>

**Plaintiff is explicitly cautioned that failure to timely respond to this Order will result in this action being dismissed with prejudice for failure to state a claim, or for failure to prosecute and/or obey Court orders pursuant to Federal Rule of Civil Procedure 41(b).**

Dated:  April 20, 2021

HONORABLE KENLY KIYA KATO
United States Magistrate Judge